Martin Rodell, J.
This is a special proceeding commenced pursuant to CPLR article 78 by a local community association to review and annul a determination of the site selection board of the New York City Off-Track Betting Corporation approving the location of an off-track betting branch office at 61-44 188th Street in the Fresh Meadows section of Queens on the grounds that the determination was made in violation of lawful procedure and was arbitrary and capricious.
The New York City Off-Track Betting Corporation (hereinafter OTB) was established by the Legislature as a public benefit corporation performing the governmental function of operating an off-track pari-mutuel betting system in the City of New York. (New York City Off-Track Betting Corporation Law, § 141; L 1970, ch 144, as renum by L 1971, ch 423, § 1.) Although OTB has been granted broad statutory powers by the Legislature to carry out its corporate purpose (see New York City Off-Track Betting Corporation Law, § 144) the power to lease premises for use as branch offices is partially limited since OTB (§ 144, subd 8) "may only enter into agreements for the purchase or lease of any property to be used in whole or in part as an off-track betting branch office which is conditioned upon the location thereof being approved by the site selection board; and further provided, that such location prior to its use of such off-track betting branch office shall have been approved by the site selection board”. The site selection board, composed of various governmental representatives and the borough president (§ 142, subd 14), acts by resolution adopted by a majority of the votes cast by all members after a statutorily mandated public hearing on notice. (§ 147, subd 7.)
In accordance with the statutory scheme provided for by the Legislature, OTB notified the site selection board (hereinafter Board) that the subject Fresh Meadows location was under consideration as an OTB branch office. OTB submitted to the Board detailed maps, diagrams and reports to support its application for approval of the proposed site. A public hearing was subsequently held with due notice by the Board and an opportunity to be heard was provided all speakers. Despite assurances to the contrary by OTB’s representative, opposition *673 to the proposed site centered around fears of increased traffic congestion, loitering and littering in the Fresh Meadows area. The hearing was subsequently recessed and members of the Board went into "executive session” inviting the OTB representative into the session to answer questions from various members of the Board. On returning to the public hearing each member of the Board expressed his opinion before voting on the proposed site. A resolution approving the site was thereafter approved by the Board by a vote of three to two.
Petitioner seeks reversal of the Board’s determination on the grounds that (1) the designation of Fresh Meadows in the New York City Zoning Resolution as a "Special Planned Community Preservation District” precludes the establishment of an OTB branch office in the district, and (2) by meeting in executive session without the presence of opponents to the site, the Board violated lawful procedure.
The site approved by the Board as an OTB branch office is located within a general commercial district (C-4). These districts compose the major and secondary shopping centers of New York City and provide "for occasional family shopping needs and for essential services to business establishments over a wide area, and which have a substantial number of large stores generating considerable traffic”. (New York City Zoning Resolution, art III, ch 1, § 31-41; emphasis supplied.) The establishment of an OTB branch office is clearly one of the permitted uses in a C-4 district. (Zoning Resolution, art III, ch 2, § 32-15; Matter of Bamonte v New York City Off-Track Betting Corp., 80 Misc 2d 980, 983.)
The designation of Fresh Meadows as a "Special Planned Community Preservation District” (Zoning Resolution, art X, ch 3) does not preclude the establishment of an OTB branch office within Fresh Meadows. The purposes of this special district do not include the elimination of commercially zoned areas or the uses permitted in those areas, but are rather "[t]o preserve and protect the character and integrity of these unique communities which, by their existing site plan, pedestrian and vehicular circulation system, balance between buildings and open space, harmonious scale of development, related commercial uses, open space arrangement, and landscaping add to the quality of urban life”. (Zoning Resolution, art X, § 103-00.) In conjunction with the general purposes and goals of these special districts no new development or enlargement which may involve demolition of buildings or substantial *674 alteration of landscaping or topography is permitted within the area except by special permit of the City Planning Commission and subject to action by the Board of Estimate. (Zoning Resolution, § 103-02.) The use of existing premises as an OTB branch office clearly does not constitute an enlargement or new development within the meaning of the Zoning Resolution and therefore no incompatibility with the purpose and goals of a "Special Planned Community Preservation District” has been shown. Since the court finds no violation of the Zoning Resolution in the approval of the site, the issue of whether OTB is bound by the Zoning Resolution need not be determined.
Petitioner’s contention that by going into "executive session” the Board acted improperly is without foundation. The Board’s statutory obligation was met by holding a public hearing before adopting the resolution approving the Fresh Meadows site for use as an OTB branch office. (New York City Off-Track Betting Corporation Law, § 147, subd 7.) The public hearing specified by statute is quasi-legislative in nature and is primarily informational to assist the Board in determining the feasibility of locating an OTB branch office on a particular site. (Matter of County of Nassau v Metropolitan Transp. Auth., 57 Misc 2d 1025, affd on opn below 32 AD2d 647; Matter of Messner v Housing & Development Admin. of City of N. Y., 78 Misc 2d 381.) Petitioner’s contentions on this issue are grounded on confusion between the functions of a quasi-legislative hearing and a quasi-judicial one involving testimony under oath, cross-examination and rebuttal. At the hearing in issue opponents to the proposed site were given ample opportunity to express their views and the fact that the Board met in "executive session” without their attendance does not, under the circumstances disclosed in the record, violate lawful procedure.
The function of the court is not to substitute its judgment for that of the Board, but to ascertain whether the Board operated and determined according to the authority and powers bestowed on it by the Legislature. (Matter of County ol Nassau v Metropolitan Transp. Auth., supra.) In approving the site at issue, the Board did not proceed in excess of its jurisdiction or in violation of lawful procedure or in a manner abusive of the broad discretionary power given to it by the Legislature.
The underlying basis of the petition appears to be the fear *675 that a betting parlor in Fresh Meadows would have a detrimental effect on the community. The fears expressed, however, are “without any present foundation in fact or proof to substantiate the outlook.” (Nowack v Department of Audit & Control of State of N. Y., 72 Misc 2d 518, 520.) Questions involving the propriety of off-track betting have been answered by the Legislature in the affirmative by the creation of the New York City Off-Track Betting Corporation. As the court stated in Bamonte v New York City Oif-Track Betting Corp. (80 Misc 2d 980, 983, supra): "If petitioner’s underlying grievance is the existence of OTB, the remedy lies with the Legislature, not the courts.”
Accordingly the petition is denied and the proceeding is dismissed.